BLACKMAR *v.* BLACKMAR.

DIVORCE—CUSTODY OF CHILDREN—EQUALLY DIVIDED COURT.
  Order modifying decree of divorce so as to give plaintiff mother
    the custody of 10-year-old boy and 8-year-old girl is affirmed by
    an equally divided court (CL 1948, § 722.541).

Appeal from Ingham; Coash (Louis E.) J. Submitted April 23, 1952. (Docket No. 94, Calendar No. 45,378.) Decided December 9, 1952.

Divorce proceedings by Betty Blackmar against Alan R. Blackmar. Petition of defendant for modification as relates to custody of children. Cross petition by plaintiff for modification as to custody. Decree amended giving plaintiff full custody. Defendant appeals. Affirmed by an equally divided court.

*Sigler & Anderson,* for plaintiff.

*Benjamin F. Watson,* for defendant.

REID, J. (*for reversal*). This is an appeal by defendant from an amended decree of divorce awarding custody of 2 minor children to plaintiff.

A decree of divorce was granted to defendant, Alan R. Blackmar, on his cross bill, on August 18, 1948. The custody of the 2 children, Alan Roger, born December 22, 1942, and Susanne Ruth, born May 18, 1944, was retained by the court, with physical custody given to the paternal grandparents until

the further order of the court. The court had said to the plaintiff Betty on the original hearing, among other things, that the court was giving her a chance to re-establish her home and morally re-establish herself in such a way that she would be able to take care of these children in a normal fashion, especially warning her not to bring men and women into her home, playing records until 3 or 5 o'clock in the morning, and that there must be a normal life for the children.

The children were in the custody of the paternal grandparents following the decree, and on January 11, 1951, defendant petitioned the court to amend the decree and award the custody of the children to defendant, averring that the welfare of the children would be best served thereby. Plaintiff filed a counterpetition and denied that the best interest of the children would be best served by defendant having their custody, but on the contrary averred that their best interest would be served by awarding their custody to her (plaintiff), and petitioned the court to grant her the custody.

Since the first of July, 1950, plaintiff has been living in a half-duplex, No 242 Stoddard, East Lansing, a block outside of the city limits, a 4-room apartment, all on 1 floor, large living-room, kitchen, 2 bedrooms, utility room and bathroom, with front and back yard, and lots of room for the children. Defendant does not challenge the fitness nor propriety of the physical surroundings of plaintiff.

In making the award of the custody to plaintiff, the court considered that plaintiff has established herself and her surroundings suitably for the interest of the children and made the award in conformity to the statute, CL 1948, § 722.541 (Stat Ann § 25.311), which is as follows:

"That in case of the separation of husband and wife having minor children, the mother of said children shall be entitled to the care and custody of all such children under the age of 12 years, and the father of such children shall be entitled to the care and custody of all such children of the age of 12 years or over: Provided, That any probate court or any court of competent jurisdiction, may, on petition and hearing thereof, make and enforce such order or orders as it may deem just and proper as to the care and custody of such minor children, excepting in cases where an order or decree may have been made by any court in chancery, regarding such children; And provided further, That nothing in this act shall prevent any court of competent jurisdiction from making and enforcing any such order or orders as it may deem just and proper as to the care and custody of such minor children in the same manner and with like effect as it could if this act had not been passed."

However, the best interest of the children is paramount. See *Davis* v. *Davis*, 296 Mich 711; *Riemersma* v. *Riemersma*, 311 Mich 452; *Sawyer* v. *Sawyer*, 312 Mich 524; *Johnson* v. *Johnson*, 318 Mich 21; *Foxall* v. *Foxall*, 319 Mich 459.

In the instant case, the trial court read into the statute cited, the added words as judicial construction, "and her having such custody would be for the best interests of the said children," but when he came to recite his findings as to the qualifications of the parents, plaintiff and defendant, the court failed to make an express recital of a finding that the best interest of the children required the award of their custody to their mother. Defendant makes much of this absence of such finding that the best interest of the children requires the custody to be given to the mother and desires that we depart from the deference we are accustomed to give to the findings of the court and make *de novo* our own finding as to the

best interest of the children. We would suppose that when the trial judge recited in his opinion the qualification by way of judicial interpretation as to best interest of the children, he indicated that he found that the best interest of the children would require him to do what he by his decree did undertake to accomplish, and the failure to recite that the best interest of the children required of him to make the award that he did make, was a mere oversight. However, we take pains to consider in detail all that the record discloses of the suitability of each of the parents. Each parent is now living in a home suitable for the children to live in. Each parent loves both the children as much and as faithfully as parents ordinarily do. Each parent desires very earnestly to have the direct custody.

Defendant's statement as to some of the details concerning his situation is as follows:

"Petitioner married Mary Jean Blackmar, a Lansing girl, June 29, 1950, and they acquired a new home at Allen Park, Michigan (near Detroit), into which they moved November 7, 1950. Petitioner and his present wife are each 30 years of age. He is a graduate of Michigan State college, 1942, with a degree of bachelor of science, and after 4 years in service, followed by 1-1/2 years of graduate study at Michigan State college, became employed by The Associated Factory Mutual of Boston in 1947, with which company he is still associated. His work has been in the chemical engineering field, plant lay-out and inspection.

"Currently, petitioner's work is within the Detroit area; earlier, because he was single, he was on the road to greater extent. His future work appears stable, i.e., substantially at or around his home base.

"The present Mrs. Blackmar, wife of petitioner, is a graduate of a Lansing high school, has a teacher's certificate, bachelor of science, from Western Michigan college in Kalamazoo, 1942, taught fifth and sixth

grades and one year of high school at Zeeland, Michigan, seventh and eighth grades in Janesville, Wisconsin, and the same grades in Pattengill school in Lansing, Michigan, until her marriage in June, 1950. Petitioner's wife has known the children of her husband's earlier marriage about 18 months, *i.e.,* since the marriage in June, 1950, and about a year prior while she and petitioner were keeping company, and enjoys harmonious relations with them. The children love their father and she would be happy to have them in their home. Petitioner and wife attend church regularly, Mrs. Blackmar believes in religious education, having been so raised herself, and would 'certainly try very hard' to assist in the children's schooling.

"From July, 1948 (the time of hearing the main case), until June, 1950, petitioner's practice was to visit his children every week end. He came to Lansing from Detroit usually late Friday and returned to work early Monday. He came to Lansing to see the children. While his parents did the shopping he was with the children.

"From July, 1948, to June, 1950, there were but 3 week ends petitioner was not in Lansing. Those absences were caused by a trip for advance schooling to Boston, the home office of his employer. Between June, 1950 (time of petitioner's remarriage), and time of hearing (January, 1951) he was not home (*i.e.,* at Lansing) some week ends. Mrs. Blackmar, Sr., testifies that in the entire period between July, 1948, and petition hearing date, January, 1951, petitioner failed to come to Lansing on but 8 week ends, and of that number, those between June, 1950, and January, 1951, were occasioned by house-hunting and furniture buying.

"Petitioner's absence from Lansing to see his children (on apparently 5 week ends between June, 1950, month of his remarriage, and January, 1951, petition hearing time) was occasioned by house-hunting, selecting furniture and moving in a new home, not by lack of concern for his children.

"Petitioner's home is modern, his wife keeps house, she gets along well with the children, there is no conflict between the children and stepmother, petitioner enjoys good relations with his progeny and he very much wants them with him.

"He is entirely willing to produce the children for week end and summer visits with their mother. His testimony here appears important:

"'I am not filing this proceeding to gratify any personal interest except my personal desire to have the children with me and the welfare of the children. There is no use trying to minimize that I want them, and I feel that I can give them a good home. * * * The nearest elementary school is approximately 9 blocks away. There is a high school in Allen Park within 3/4 of a mile. * * * They would definitely have religious education.'"

Among other things, plaintiff has the following to say as to her situation:

"From the time of the divorce, plaintiff has had in mind having her children with her and has kept before her the remarks of the court that at a future date she might apply for their custody. She has worked toward that goal of having them with her.

"Following the divorce she did secretarial work for a year at Universal C.I.T., a finance company, Tussing building, Lansing. She left that employment for a better position in August, 1949, as secretary to the assistant director, finance division, State highway department. She left State employ in June, 1950, for a better position as secretary to the director of alumni relations, Michigan State college, East Lansing, Michigan, where she is still working. She has executive as well as secretarial duties to perform and is in charge of the office when the director and his assistant are absent.

"She obtained the apartment with the thought in mind of having the children with her. She had intended to apply to the court for custody of the children at the end of the school year when it would not

interrupt their schooling, but because of the inability of the paternal grandparents to continue the responsibility of the care and custody of the children at the present time, she applied at an earlier date.

"Plaintiff's mother, single, age 51, in good health, for the past 2 years assistant manager of the Singer Sewing Machine Company, Flint, Michigan, will leave her position and live with plaintiff, helping care for the children. Plaintiff plans to continue working at Michigan State college, hours 8 to 5, five days a week. The children would attend Marble school within 6 blocks of the home. She could get the children ready for school before she left for work and would be home evenings to care for them.

"Plaintiff is in good health, age 26, and a graduate of Lansing Central high school. She loves her children very much and feels that they should have the care of their own mother."

There was a period of a month at a time and also another period of 5 months at a time, when Mrs. Clarence Blackmar, the mother of defendant and actual direct custodian of the children, did not hear from the mother, plaintiff, whose excuse for inattention to her children during such period is inadequate.

The boy Alan Roger when about 6-1/2 years of age, came down with scarlet fever and was very sick. Mrs. Clarence Blackmar tried to reach the plaintiff mother on March 5, 1949, but did not succeed until March 7th. Plaintiff did not come to see the boy, but did talk with Mrs. Clarence Blackmar on March 10th, and did not call again until April 13th. The plaintiff mother also paid scant attention to the boy when he had to have a painful and serious operation in July, 1949. The mother has lived within the same area as the children during all the time defendant's mother has had the children with her, except that defendant's mother has taken the children to Torch Lake in the summers but not for a greater period than 2 weeks at any time.

The father defendant has made trips each week end from his place of residence in the Detroit area, to visit the children, in the Lansing area, except a few week ends when his attention was required elsewhere.

The plaintiff mother testified on cross-examination:

"*Q.* Then you agree, do you, that the things concerning which I questioned you, having in mind who was there and that the children were there and the type of party and the lateness of the hour, that was not a good moral atmosphere for those children, was it?

"*A.* No, it wasn't."

This question and answer pertained to matters that occurred in plaintiff's home, in the absence of her husband and before the granting of the decree of divorce.

Consideration of the whole record brings us to the conclusion that the plaintiff mother is not the equal of the defendant father in consistent moral worth, nor in the beneficial influence exerted over the children, nor in the consistent love, care and affection shown by the defendant father for the children.

The father has remarried. His present wife, trained as a teacher, is highly interested in the children and in their welfare. His home furnishes an abundance of accommodations for the children to be taken care of. His present wife will be continuously in actual charge of the children. The father has been faithful in the highest degree to his children during the time they have been in his mother's custody, which custody was really on his behalf. To change the custody now and to award them to the plaintiff mother would operate inevitably to dissociate the children from those who have taken the most active,

commendable and praiseworthy interest in them during the last 3-1/2 years.

On the other hand, the mother Betty, plaintiff, lives in a rented apartment where there would not be room enough for the children to be well housed in view of the entire occupancy of the apartment. Under the order appealed from, their actual custodian is to be her mother. Plaintiff's mother has never manifested a high degree of interest in the children and in the last 3-1/2 years she has not visited the children during their critical illnesses and has not manifested any interest in their welfare comparable to that of their father, defendant, and of his mother. The children's mother, plaintiff, would be absent from the children much of the time because she is required to work out for her living.

The children's welfare requires that their custody be given to their father the defendant, and he should be accordingly given their custody, with right on the part of the mother of visitation similar to that accorded to the father in the amended decree appealed from, and with full authority to the trial court to amend the decree as shall be found necessary under showing of changed circumstances.

The amended decree appealed from should be reversed. A decree should be entered in this Court in accordance with this opinion. No costs.

DETHMERS and BOYLES, JJ., concurred with REID, J.

SHARPE, J. (*for affirmance*). I am not in accord with the opinion of Mr. Justice REID. The children in this case are of the ages of 8 and 10 years. The statute, CL 1948, § 722.541 (Stat Ann § 25.311), gives the custody of children under 12 years of age to the mother, in recognition of the fact that as a general rule the welfare of such children requires a mother's

care; see *Carlson* v. *Carlson,* 237 Mich 105, and it is only when the mother is not of good moral character, or where conditions exist in her home that make it ·an unfit place for children, that the court will ignore the provision of the statute and give the father the custody of the children under the age of 12 years; see *Epstein* v. *Epstein,* 234 Mich 200. The trial court, in an opinion on original hearing, July 20, 1948, stated:

"The next thing is the question of the children, which the courts are primarily interested in. There is no proof here of any misconduct or mistreatment, I want to put it that way, on the part of either party toward the children. Apparently they both like the children. It is too bad that they have to end up this way in a divorce action.

"But as far as the custody of the children is concerned, it will be retained by the court. Neither party at this time will be given custody of the children. Until such time as Mrs. Blackmar reestablishes her home, the children will remain with the grandmother, Mrs. Blackmar. Now, as I say, the custody will remain with the court, but their physical custody will be in her hands until such time as Mrs. Blackmar has a home in which she can properly care for these children. At that time the court will entertain a motion and will grant her custody of them if everything is as it should be at that time.

"And I will say by reestablishing her home, the court would not see fit or would not grant custody of these children as to where they are to live as long as Mrs. Blackmar works until 2:30 o'clock in the morning or later. If she wants these children, wants them in her home to take care of them, it will be up to her to establish a home where she has working hours during the day to be there at night to take care of these children."

And on a petition to modify the decree, the court stated in an opinion March 6, 1951:

"As previously stated herein, at the conclusion of the trial of this case in 1948, this court stated that Mrs. Blackmar could petition the court for the custody of the children in the future if she had an adequate place in which to take said children and provided that she conducted herself in a proper manner. This court finds that Mrs. Blackmar has complied with the suggestions of this court, that she is a fit and proper person to have custody of said children and that her home is a proper place for said children to live. This court also finds that the home of Mr. Blackmar would be a proper place for these children if custody was granted to him. In view of the statute this court has no alternative but to grant physical custody to the plaintiff and cross-defendant."

We have adhered to the rule that the provisions of the statute should not be disregarded unless it clearly appears that the mother, by reason of her habits and home life, would be an unfit person to have custody of children. See *Eichholtz* v. *Eichholtz,* 319 Mich 42. The real issue in this case is whether a mother and maternal grandmother or a father and stepmother are best fitted to have the care and custody of the children, both parties having a home, the physical character of which is suitable as a home for children. In divorce proceedings we hear the cause *de novo*. In such cases we give consideration to the factual findings of the trial judge, who is in a better position to weigh the credibility of the witnesses than is this Court. In this case the trial judge had an investigation made by the friend of the court of the present home of plaintiff, and found it to be a modern 4-room apartment, located in a duplex in East Lansing, with a school located within 5 blocks of the home.

The record clearly shows that plaintiff is a person morally fit to have the physical custody of the children; moreover, with the assistance of "grandma," the children will have a better chance for a home life

than they would have with their father. The result of Mr. Justice REID's opinion does violence to the accepted rule that the trial judge is the best judge of the credibility of witnesses.

The decree is affirmed, with costs to plaintiff.

BUTZEL and BUSHNELL, JJ, concurred with SHARPE, J.

CARR, J., and the late Chief Justice NORTH did not sit.